In the Matter of the Petition and Resolution for ANNEXATION OF CERTAIN LAND TO the CITY OF COTTAGE GROVE.

TOWN OF GREY CLOUD, Appellant,

v.

MINNESOTA MUNICIPAL BOARD, Respondent,

Paul A. Schilling, et al., Respondents.

No. C2–82–523.

Supreme Court of Minnesota.

March 18, 1983.

Rasmussen & Ball and Ian Traquair Ball, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., and Cooper S. Ashley, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Municipal Bd.

Popham, Haik, Schnobrich, Kaufman & Doty, Raymond A. Haik and Bruce D. Malkerson, Minneapolis, for Schilling, et al.

Wallace F. Gustafson, Willmar, amicus curiae for Minnesota Ass'n of Tps.

## ORDER

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the order of the Washington County District Court, the Honorable Esther M. Tomljanovich, dated March 11, 1982, be, and the same is, affirmed pursuant to Rule 136.-01(2), Rules of Civil Appellate Procedure.

PETERSON, J., took no part in the consideration or decision of this case.

WAHL, Justice, dissenting.

Because I conclude that the Minnesota Municipal Board improperly ordered annexation in this case, I respectfully dissent.

First, the Minnesota Municipal Board (MMB) has the power to order annexation of unincorporated property to abutting municipalities under the procedures set out in Minn.Stat. § 414.031 (1982). Annexation proceedings can be initiated in several ways, one of which is by petition of 20% of the property owners or 100 owners, whichever is less, in the area to be annexed. Minn.Stat. § 414.031, subd. 1(c). The petition must describe the property proposed to

be annexed and must be accompanied by a resolution of the annexing municipality supporting the petition. Both the petition and supporting resolution must be served upon the affected township. In this case, proper service was not made, and the petition and resolution described different parcels of land. Although these errors may have occurred out of inadvertence, proper compliance with the statute is required in order to prevent the confusion that resulted in this case as to the exact area to be annexed. Preparation of one's case before the MMB requires knowledge of the exact area under consideration.

Second, I conclude that the MMB ordered the annexation of 1200 acres of the Grey Cloud Township (Grey Cloud) in contravention of designations of the area as "rural" by other state agencies. That acreage has been designated as a "critical area" under the Critical Areas Act of 1973, Minn.Stat. § 116G.01–.14 (1982), by the Environmental Quality Board (EQB). Such designation as an area of important historic, cultural, esthetic or natural value required Grey Cloud to prepare a plan for the area to prevent uncontrolled or inappropriate development. The EQB required a plan that would preserve the area as a Rural Open Space District, a designation meant to protect the scenic, natural and open space character of this portion of the river corridor. Further, the Metropolitan Council has designated the area as a Rural Service Area under its land use planning powers set out in Minn.Stat. §§ 473.851–.872 (1982). In compliance with these two designations, Grey Cloud prepared plans. These plans, which called for a possible park preserve and low-density housing as well as continued, controlled mineral extraction, were approved by the EQB and the Metropolitan Council.

Thereafter, the J.B. Shiely Company and Paul Schilling, who had opposed the Grey Cloud Critical Area/Comprehensive Plan, filed this petition for annexation to the abutting municipality of Cottage Grove. The MMB, instead of accepting the EQB's and Metropolitan Council's designations of the area as rural, made the finding, neces-

sary for annexation, that the area is or is about to become urban or suburban in character. This finding by the MMB was clearly at odds with existing state policy. At the very least, annexation of this area to a municipality was premature. The Metropolitan Council guidelines required a rural population density for Grey Cloud Township, with no extension of urban services to the area until 1990, if ever.

The statute authorizing the MMB contains a legislative finding that municipal government is appropriate for residential, commercial, industrial, and governmental purposes and that township government is appropriate for agricultural, open space, and rural residential areas. Minn.Stat. § 414.01, subd. 1 (1982). After the mined land in the annexation area is reclaimed, it will become rural residential in accordance with zoning requirements and its rural open space designation. The MMB should have accepted the designations of the area made by other agencies and, to be consistent with those designations and the legislative findings in section 414.01, subd. 1, should have denied the annexation petition. Instead, it granted the annexation after Grey Cloud had invested much of its time and limited budget on critical area and comprehensive area plans in good faith compliance with the mandates of other state agencies. Petitioners should not now be permitted to circumvent these plans by turning to the MMB for annexation. At the hearing before the MMB, Michael Sieben, South Washington County's state representative, testified against the proposed annexation. It was Representative Sieben's opinion, as it is mine, that this use of annexation proceedings manipulates the MMB as a device to make an "end run" around the plans approved by the other agencies and turns the MMB into a zoning appeals board.

I would reverse the order of the lower court affirming the order of the Minnesota Municipal Board.